IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

MARY ANN CLAYPOOL,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C09-0121

RULING ON JUDICIAL REVIEW

———————————

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV. FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *A. Claypool's Education and Employment Background* . . . . . . . . . . . . . 5
   *B. Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . 5
      *1. Claypool's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . 5
      *2. Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . 7
   *C. Claypool's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*V. CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   *A. ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . . 11
   *B. Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . . 13
      *1. Listing § 8.05* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      *2. Opinions of Treating Physicians* . . . . . . . . . . . . . . . . . . 15
         *a. Dr. Risk* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         *b. Dr. Bagheri* . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         *c. Dr. Kim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*VI. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*VII. ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Mary Ann Claypool on August 24, 2009, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Claypool asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Claypool requests the Court to remand this matter for further proceedings.

## II. PRIOR PROCEEDINGS

On July 28, 2006, Claypool applied for disability insurance benefits. In her application, Claypool alleged an inability to work since September 28, 2003 due to back, shoulder, and neck problems.[1] Claypool's claim was denied on October 25, 2006. On February 1, 2007, Claypool's application was denied on reconsideration. On December 7, 2006, Claypool requested an administrative hearing before an Administrative Law Judge ("ALJ"). On October 27, 2008, Claypool appeared via video conference with her attorney before ALJ Debra Bice for an administrative hearing. Claypool and vocational expert Julie A. Svec testified at the hearing. In a decision dated January 22, 2009, the ALJ denied Claypool's claim. The ALJ determined that Claypool was not disabled and not entitled to

---

[1] At the administrative hearing held on October 27, 2008, Claypool amended her alleged disability onset date from September 28, 2003 to February 7, 2006. Prior to filing her present application for disability benefits, Claypool applied for disability benefits in 2004. Her 2004 application was initially denied on February 17, 2004, and then on reconsideration on June 3, 2004. A hearing was held before an Administrative Law Judge ("ALJ") on her first application. In a decision dated February 6, 2006, the ALJ determined that Claypool was not disabled. *See* Administrative Record at 69-76. Consequently, at the 2008 administrative hearing, Claypool's attorney explained that:

> ATTY:    Yes, we had a prior hearing. We were denied.
> So the onset for this one has to be the day after
> the last denial, so it would be 2/7 of '06.

*See* Administrative Record at 29.

disability insurance benefits because she was functionally capable of performing other work that exists in significant numbers in the national economy. Claypool appealed the ALJ's decision. On June 22, 2009, the Appeals Council denied Claypool's request for review. Consequently, the ALJ's January 22, 2009 decision was adopted as the Commissioner's final decision.

On August 24, 2009, Claypool filed this action for judicial review. The Commissioner filed an Answer on November 25, 2009. On March 4, 2010, Claypool filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she could perform other work that exists in significant numbers in the national economy. On April 30, 2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 6, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 405(g), the Court has the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Moore v. Astrue*, 572 F.3d 520,

522 (8th Cir. 2009) ("'Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.' *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Moore*, 572 F.3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th

4

Cir. 2005)."); *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.").

## IV. FACTS

### A. Claypool's Education and Employment Background

Claypool was born in 1958. She completed the twelfth grade. She has no training or education beyond high school. At the administrative hearing, Claypool testified that she primarily worked part-time as a lifeguard for over twenty years. A detailed earnings report, covering Claypool's employment history from 1980 to 2008, shows that Claypool had a range of earnings from 1982 to 2007, with a low of $465.66 (1982) and a high of $8,768.80 (2001). Claypool had no earnings in 2008.

### B. Administrative Hearing Testimony

#### 1. Claypool's Testimony

At the administrative hearing, Claypool explained that she was unable to work because of general pain. Specifically, she stated that "I have heel pain, foot pain, psoriasis all over my feet. . . . To walk very far and to stand very long really hurts, and it goes up to my back, and then, my back to my neck[.]"[2] When asked where the psoriasis was located on her body, Claypool replied that it was located on her head, ears, hands, elbows, armpits, under her breasts, knees, legs, and feet.

The ALJ questioned Claypool regarding limitations due to her neck problems. Claypool explained that she had difficulty sleeping due to her neck pain. She also stated that looking up and down or side-to-side caused her neck to hurt. The ALJ also asked Claypool whether she had problems with her right arm. Claypool responded that she had surgery on her right shoulder and could not lift her right arm above her shoulder. Claypool also stated that she has pain in her feet, ankles, wrists, hands, and lower back.

---

[2] *See* Administrative Record at 34.

Claypool further testified that she suffered migraine headaches two or three times per week as a side-effect of the pain. Specifically, she stated that "[w]hen I have the lower-back pain, it radiates up to my neck, and once it get[s] to my neck, that's where I have the problem with the migraines."[3]

Next, the ALJ questioned Claypool about her activities of daily living. Claypool testified that her husband helps her wash her hair and shave her legs because she has difficulty raising her arms above her shoulders and bending over. She further testified that she could not vacuum, dust or do laundry because it hurt her back. The ALJ also asked Claypool to describe her limitations:

> Q:   [A]bout how much can you lift at one time?
> A:   A gallon of milk.
> Q:   Okay, and about how long could you be on your feet at one time?
> A:   Fifteen minutes, maybe.
> Q:   And what happens then?
> A:   My feet start hurting. It goes up to my lower back. . . .
> Q:   And about how far can you walk at one time?
> A:   . . . Half a block.
> Q:   Any difficulty sitting?
> A:   Oh, yeah. . . .
> Q:   About how long can you sit before you start having some pain?
> A:   . . . About 15 minutes, maybe.

(Administrative Record at 46-47.) Claypool estimated that on a typical day, her pain with medication was a seven on a scale of one-to-ten, with ten being the most severe.

### 2.   Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who is able to perform:

> light work as defined in the Social Security regulations, but
> that the individual cannot climb ladders, [] ropes or scaffolds,

---

[3] *See* Administrative Record at 40.

and can only occasionally stoop, kneel, crouch or crawl, and
can only occasionally do overhead reaching with the right arm.

(Administrative Record at 61.) The vocational expert testified that under such limitations, Claypool could perform the following work: (1) parking lot attendant (350 positions in Iowa and 18,000 positions in the nation), (2) ticket taker (600 positions in Iowa and 16,000 positions in the nation), and (3) cashier (8,000 positions in Iowa and 900,000 positions in the nation). Next, the ALJ changed her hypothetical from light work to sedentary work. The vocational expert testified that under such limitations, Claypool could perform the following work: (1) order clerk (350 positions in Iowa and 170,000 positions in the nation), addresser (500 positions in Iowa and 20,000 positions in the nation), and (3) assembler (300 positions in Iowa and 12,000 positions in the nation). Lastly, the ALJ combined both the light work and sedentary work hypotheticals with additional limitations, including the individual only being able to use his or her hands for 15 to 20 minutes per day for fine manipulative activities, requiring the individual to lie down two to three times per day for approximately 45 minutes each time, requiring the individual to elevate his or her legs to waist level when seated, and missing four or more days per month from work. The vocational expert testified that under such limitations, there would be no jobs that Claypool could perform on a competitive basis.[4]

### C. Claypool's Medical History

On September 2, 2003, Claypool presented at the St. Luke's Hospital Emergency and Trauma Center, in Cedar Rapids, Iowa, complaining of back pain and tingling in her arms. Upon examination, Dr. Steven R. Gorsch, M.D., found no neurologic deficits and recommended that Claypool follow-up with her primary doctor if the pain persisted.

---

[4] Claypool's attorney asked the vocational expert whether an individual who needs "to take more than the normal work breaks, every 30 minutes or so," would be precluded from competitive employment. *See* Administrative Record at 63-64. The Vocational expert responded that such an individual would be precluded from competitive employment.

On November 19, 2003, Claypool met with Dr. Erich W. Streib for an electrodiagnostic consultation. Claypool complained of tingling and numbness in her right hand and arm. Upon examination, Dr. Streib found "[e]ntirely normal electrodiagnostic studies of the right arm, in particular there is no evidence of ulnar nerve neuropathy."[5] Dr. Streib recommended an MRI scan of Claypool's spine to further evaluate the numbness in her right hand and arm.

On December 23, 2003, Claypool met with Dr. Loren J. Mouw, M.D., complaining of right arm numbness and tingling. An MRI showed a large central disc protrusion at C5-6 and mild changes in the C6-7 and C7-T1 area. Dr. Mouw diagnosed Claypool with resolving cervical radiculopathy and cervical stenosis secondary to a large central disc protrusion. Dr. Mouw recommended surgery as treatment.

In April 2004, Claypool underwent an anterior cervical discectomy and fusion performed by Dr. Mouw. At two follow-up appointments, in May 2004 and June 2004, Claypool reported to Dr. Mouw that she had no significant neck pain, but had some numbness in her fingers.

In February 2006, Claypool was injured while teaching swimming lessons. A child jumped on her right shoulder and neck resulting in discomfort and pain. Dr. Mouw referred her to Dr. David P. Hart, M.D., an orthopedic surgeon. Upon examination, Dr. Hart diagnosed Claypool with right shoulder rotator cuff tear and cervical radiculitis. Dr. Hart gave Claypool a DepoMedrol and Marcaine injection in her shoulder and recommended rehabilitation as treatment.

On June 2, 2006, Claypool was evaluated by Dr. Sunny Kim, M.D. Upon examination, Dr. Kim diagnosed Claypool with right shoulder and parascapular pain "which appears to be myofascial in nature with multiple trigger points."[6] Dr. Kim

---

[5] *See* Administrative Record at 282.

[6] *Id.* at 312.

recommended trigger point dry needling as treatment, and Claypool underwent such a procedure at that time.

On June 26, 2006, Claypool met with Dr. Kim for a follow-up appointment. Claypool reported improvement in her neck and shoulder pain for several days following the trigger point injections. After a few days, however, she had a reoccurrence of the pain. Dr. Kim diagnosed her with right-sided neck and shoulder pain secondary to myofascial trigger points and probable underlying rotator cuff tear. Dr. Kim recommended an active physical therapy program, medication, and future trigger point injections as treatment. Dr. Kim also implemented work restrictions:

> such that [Claypool] should not have any overhead activity, she should not sit for prolonged periods of time without frequent breaks as needed, she should have proper work ergonomic evaluation to avoid poor posture which can aggravate her pain.

(Administrative Record at 315.)

In August 2006, Claypool underwent arthroscopic subacromial decompression of her right shoulder performed by Dr. Hart. On September 1, 2006, at a follow-up appointment, Dr. Hart found that Claypool was "doing very nicely." On September 29, 2006, Dr. Hart found that Claypool "continue[d] to improve" following the surgery. On November 13, 2006, Dr. Hart opined that Claypool was "doing just great." He advised that she could return to work without any restrictions.

On October 26, 2006, Dr. C. David Smith, M.D., reviewed Claypool's medical records and provided Disability Determination Services ("DDS") with a residual functional capacity ("RFC") assessment. Dr. Smith determined that Claypool could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Smith also determined that Claypool could frequently climb stairs and balance, but only occasionally stoop, kneel, crouch, and crawl.

Dr. Smith further found that Claypool was limited in reaching in all directions. Specifically, Dr. Smith opined that Claypool's "[o]verhead reach would be limited by [her] prior cervical fusion and right should subacromial decompression procedure. Occasional overhead reach with the right hand could be performed."[7] Dr. Smith also determined that Claypool should avoid concentrated exposure to vibration because it could exacerbate her back pain. Dr. Smith found no visual or communicative limitations.

In November 2007, Claypool met with Dr. Winthrop S. Risk II, M.D., complaining of neck pain, low back pain, migraine headaches, pain in her hands, and burning in her feet. Upon examination, Dr. Risk diagnosed Claypool with failed neck surgery syndrome and chronic neck pain, low back pain, probable carpal tunnel syndrome, and peripheral neuropathy. Dr. Risk prescribed medication and gave her wrist splints to wear at night as treatment.

On June 16, 2008, Dr. Risk filled out a "Pain-Physical Residual Functional Capacity Questionnaire" form provided by Claypool's attorney. On the questionnaire, Dr. Risk diagnosed Claypool with carpal tunnel syndrome, peripheral neuropathy, restless legs, and low back and neck pain. Dr. Risk opined that during a typical workday, Claypool would frequently experience pain which would interfere with attention and concentration needed to perform simple work tasks. Dr. Risk further opined that Claypool could: (1) walk one city block without rest or severe pain; (2) sit for one hour at one time before needing to get up; (3) stand for 15 minutes at one time before needing to sit down or walk around; and (4) sit, stand, and walk for less two hours total in an eight-hour workday. Dr. Risk further opined that Claypool would need to take unscheduled breaks every 30 minutes for 10 minutes at a time during an eight-hour workday. Dr. Risk limited Claypool to lifting 10 pounds or less in a work setting. Dr. Risk also limited Claypool to never twisting, stooping, crouching, or climbing ladders and stairs. Lastly, Dr. Risk

_____

[7] *See* Administrative Record at 352.

opined that Claypool would miss more than four days of work per month due to her impairments.

On August 26, 2008, Claypool was referred to Dr. Shahin Bagheri, M.D., for evaluation of possible psoriatic arthritis. Claypool reported diffuse pain and swelling, particularly in her fingers, ankles, and knees. Dr. Bagheri also noted extensive psoriasis of the skin. Upon examination, Dr. Bagheri diagnosed Claypool with cutaneous psoriasis and possible psoriatic arthritis, fibromyalgia with diffuse musculoskeletal pain and multiple myofascial tender points, nonrestorative sleep, depression, anxiety, and insomnia. Dr. Bagheri recommended medication as treatment. At a follow-up appointment, on September 12, 2008, Dr. Bagheri concluded that Claypool suffered from psoriatic arthritis and prescribed medication as treatment.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Claypool is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be

not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Claypool had not engaged in substantial gainful activity since February 7, 2006. At the second step, the ALJ concluded from the medical evidence that Claypool had the following severe combination of impairments: neck pain, status post cervical fusion; shoulder pain, status post right rotator cuff tear and surgery; degenerative disc disease of the thoracic and lumbar spine; migraine headaches; psoriasis; fibromyalgia; restless leg syndrome; obesity; and carpal tunnel syndrome. At the third step, the ALJ found that Claypool did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Claypool's RFC as follows:

> [Claypool] has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) except the individual
> cannot climb ladders, ropes or scaffolds. The individual can

occasionally stoop, kneel, crouch and crawl. The individual
can only occasionally reach overhead with her right arm.

(Administrative Record at 11.) Also at the fourth step, the ALJ determined that Claypool
could not perform any of her past relevant work. At the fifth step, the ALJ determined
that based on her age, education, previous work experience, and RFC, Claypool could
work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ
concluded that Claypool was not disabled.

### B. Objections Raised By Claimant

Claypool argues that the ALJ erred in two respects. First, Claypool argues that the
ALJ erred by failing to consider whether her impairments meet or equal Listing § 8.05 for
psoriasis. Second, Claypool argues that the ALJ erred in discounting the opinions of
several of her treating physicians.

### 1. Listing § 8.05

Claypool argues that the ALJ failed to properly consider whether her impairments
meet or equal Listing § 8.05 for psoriasis.[8] Listing § 8.05 describes the impairment
category for dermatitis:

> 8.05 *Dermatitis* (for example, psoriasis, dyshidrosis, atopic
> dermatitis, exfoliative dermatitis, allergic contact dermatitis),
> with extensive skin lesions that persist for at least 3 months
> despite continuing treatment as prescribed.

20 C.F.R. § 404, Appendix 1, Subpart P, § 8.05. Listing § 8.00C explains how the Social
Security Administration assesses the severity of a skin disorder:

> C. *How do we assess the severity of your skin disorder(s)?*
> We generally base our assessment of severity on the extent of
> your skin lesions, the frequency of flareups of your skin
> lesions, how your symptoms (including pain) limit you, the
> extent of your treatment, and how your treatment affects you.

---

[8] *See* 20 C.F.R. § 404, Appendix 1, Subpart P, § 8.05 (impairment category for
dermatitis, including psoriasis).

1. Extensive skin lesions. Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:

a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity

b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. § 404, Appendix 1, Subpart P, § 8.00C. In order to prove that an impairment matches a listing, the impairment "'must meet all of the specified medical criteria.'" *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)); *see also Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995) (same).

In her decision, the ALJ addressed Listing § 8.05 in determining that Claypool does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Appendix 1, Subpart P. Specifically, the ALJ explained that:

Section 8.05 requires extensive skin lesions that persist for at least 3 months despite treatment. Section 8.00C defines extensive skin lesions as involving multiple body sites or critical body areas and result in very serious limitation such as use of the extremities, fine or gross movements or ambulation. The photographs of [Claypool's] hands and feet are insufficient to establish that the criteria of 8.00C and 8.05 have been met. Although the medical records indicated the presence of psoriasis other examinations fail to mention the presence of psoriasis. Dr. Risk has indicated limitations on [Claypool's] functioning but not as a result of her psoriasis.

14

The ALJ's findings point to a lack of evidence in the record to support a finding that Claypool's psoriasis causes a "very serious limitation" as required by §§ 8.00C and 8.05. In particular, neither Dr. Risk, nor any other treating or non-treating physician finds that Claypool has psoriasis which causes her "very serious" limitations. Therefore, having reviewed the entire record, the Court finds that there is substantial evidence in the record which supports the ALJ's finding that Claypool's psoriasis is not an impairment that meets the requirements of Listing § 8.05. *See Owen*, 551 F.3d at 798. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusion of the ALJ because it is are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.    *Opinions of Treating Physicians*

Claypool argues that the ALJ failed to properly evaluate the opinions of her treating physicians, Dr. Risk, Dr. Bagheri, and Dr. Kim. Specifically, Claypool argues that the ALJ's reasons for discounting the doctors' opinions are not supported by substantial evidence on the record. Claypool maintains that this matter should be reversed and remanded for further consideration of the opinions of Drs. Risk, Bagheri, and Kim.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v.*

*Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

### a. Dr. Risk

In her decision, the ALJ thoroughly addressed and considered the opinions of Dr. Risk. Specifically, the ALJ determined that:

> A neurologist[, Dr. Risk,] who had seen [Claypool] on 4 occasions completed a functional capacity form at the request of [Claypool's] representative June 16, 2008, and indicated [Claypool] was greatly functionally limited. I give the form little weight. The form is internally inconsistent. The doctor indicates [Claypool] can sit up to an hour at a time before needing to get up, but then indicates [Claypool] needs the ability to change positions at will from sitting, standing or walking. The doctor's finding are not consistent with his

16

> treatment notes and [Claypool's] daily activities. The doctor
> indicated [Claypool] could sit 'less than 2 hours' and stand
> and/or walk 'less than 2 hours[.]'[] However, [Claypool] had
> told the doctor that she was working 4 hours a day making
> sandwiches. The doctor indicates [Claypool] 'avoids' use of
> the hands for grasping, turning and twisting, and use of the
> arms for reaching, including overhead. The opinion appears
> [to] be based on [Claypool's] comment, and is not consistent
> with [Claypool's] activities involved in sandwich making 4
> hours per day, several days per week. The doctor opines
> [Claypool] would 'frequently' experience pain or other
> symptoms severe enough to interfere with attention and
> concentration needed to perform even simple work tasks, but
> her performance of the job for approximately a year
> establishes her ability to perform the work on a consistent
> week in and week out, month in and month out basis. . . .
> The doctor's opinions are not supported by signs and findings
> consistent with the degree of limitation indicated.

(Administrative Record at 13-14.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Risk. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Risk's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b. *Dr. Bagheri*

Claypool argues that the ALJ failed to properly consider Dr. Bagheri's diagnosis of psoriatic arthritis. In her brief, Claypool, not Dr. Bagheri, extrapolates from Dr. Bagheri's diagnosis of psoriatic arthritis that "psorias [*sic*] on the feet can make it difficult to stand and walk."[9] Additionally, in her brief, Claypool indicates that her ability

---

[9] *See* Claypool's Brief at 22.

to stand and walk is limited by Dr. Bagheri's diagnosis of psoriasis and psoriatic arthritis, even though Dr. Bagheri offers no such opinion.

A thorough review of Dr. Bagheri's treatment notes reveals that while Dr. Bagheri diagnosed Claypool with psoriatic arthritis, Dr. Bagheri did not find any limits on her ability to stand or walk.[10] Furthermore, Dr. Bagheri believed that Claypool's psoriatic arthritis could be treated with medication.[11]

The ALJ addressed Dr. Bagheri's opinions and discussed Dr. Bagheri's treatment recommendations:

> [Claypool] more recently in August 2008 saw a specialist for a flare of psoriasis. She received the medication methotrexate. There is no indication that the medication will fail to control or resolve the flare symptoms and return [Claypool] to her baseline. Medications have been effective to a degree in reducing or controlling symptoms. There are no side effects of medications credibly established with have lasted for a 12 month continuous period despite attempts at adjustment or substitution, and which further reduce the functional capacity assigned to [Claypool] by the undersigned.

(Administrative Record at 14.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Bagheri. The Court also finds that the ALJ provided "good reasons" for explaining Dr. Bagheri's opinions regarding treatment of Claypool's psoriasis. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

---

[10] *See* Administrative Record at 391-97.

[11] *Id.*

### c. Dr. Kim

Claypool argues that failed to evaluate the opinion of Dr. Kim regarding work restrictions placed on her in June 2006. Dr. Kim diagnosed Claypool with right-sided neck and shoulder pain secondary to myofascial trigger points and probable underlying rotator cuff tear. Dr. Kim implemented the following work restrictions:

> [Claypool] should not have any overhead activity, she should not sit for prolonged periods of time without frequent breaks as needed, she should have proper work ergonomic evaluation to avoid poor posture which can aggravate her pain.

(Administrative Record at 315.) The Court finds it significant, however, that following her meetings with Dr. Kim, in August 2006, Claypool underwent arthroscopic surgery on her right shoulder performed by Dr. Hart. At a follow-up appointment, in September 2006, Dr. Hart found that Claypool was "doing very nicely." Later in September 2006, Dr. Hart found that Claypool "continue[d] to improve" following the surgery. On November 13, 2006, Dr. Hart opined that Claypool was "doing just great." He advised that she could return to work without any restrictions.[12]

While the ALJ did not address Dr. Kim's work restrictions based on her pre-surgery shoulder problems in her decision, she did address Dr. Hart's post-surgery shoulder prognosis. Specifically, the ALJ determined that:

> [Claypool] was released to return to work without restrictions in November 2006 following shoulder surgery. She admitted she was doing just great and was eager to get back to work. The medical opinion is from a treating specialist. The opinion is supported and consistent with [Claypool's] admissions and has been given a good deal of weight. The medical opinion and [Claypool's] admissions establish the success of surgery and are not consistent with [Claypool's] allegations of inability to lift 'anything' with her right arm and her allegations of disability from all work or from jobs existing in significant numbers in the national economy.

---

[12] *See* Administrative Record at 363-64.

(Administrative Record at 13.)

In considering the ALJ's decision not to address Dr. Kim's pre-surgery opinion regarding Claypool's shoulder problems, the Court bears in mind that "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (citing *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993)). Failure to cite specific evidence does not indicate that the evidence was not considered by the ALJ. *Id.* (citing *Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995)).

Turning to her decision, the ALJ noted that she considered the entire record, including all symptoms consistent with the objective medical evidence and other evidence and the opinion evidence of treating, examining, and consultative doctors. After careful review of the entire record, the Court finds that the ALJ's focus on Dr. Hart's post-surgery opinions and lack of discussion of Dr. Kim's pre-surgery opinions is not evidence that the ALJ failed to consider Dr. Kim's opinions in making her final determination. *See Black*, 143 F.3d at 386 (failure to cite specific evidence does not indicate that the evidence was not considered by the ALJ). It is clear from the ALJ's discussion of Dr. Hart's opinions, that Claypool's shoulder problems improved following surgery, including the lifting of any work restrictions associated with Claypool's shoulder. Therefore, the ALJ did not err in choosing not to discuss Dr. Kim's pre-surgery opinions and focus solely on Dr. Hart's post-surgery opinions. *See Id.* ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.") Because the ALJ properly considered and weighed the opinion evidence provided by Dr. Hart, the Court concludes that the ALJ fully and fairly developed the record with regard to Claypool's shoulder problems and her decision is supported by substantial evidence on the record as a whole. *See Travis*, 477 F.3d at 1041.

## VI.  CONCLUSION

The Court finds that there is substantial evidence in the record which supports the ALJ's finding that Claypool's psoriasis is not an impairment that meets the requirements of Listing § 8.05.  The Court also finds that the ALJ properly considered, discussed, and weighed the medical opinion evidence in the record, particularly the opinions of Drs. Risk, Bagheri, Kim, and Hart.  Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII.  ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this __7ᵗʰ__ day of July, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA